UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SOUNDEXCHANGE, INC.<br><br>Plaintiff<br><br>v.<br><br>MUZAK, LLC<br><br>Defendant | Case 15-cv-0476-RCL |

### MEMORANDUM OPINION

Now before the Court is plaintiff's Motion for Summary Judgment as to Liability [ECF No. 35]. Upon consideration, plaintiff's motion is **GRANTED IN PART** and **DENIED IN PART**. The Court grants the motion as to the plaintiff's prima facie case, but believes a summary judgment ruling on defendant's affirmative defenses would be premature.

### I. BACKGROUND

Muzak, LLC ("Muzak" or "defendant") is a provider of digital music that generates revenue by packaging sound recordings into channels and providing those channels to individuals who subscribe to cable and satellite television system operators. Previously, subscription services, such as Muzak, were not required to obtain a license to publicly perform sound recordings because copyright owners did not have an exclusive right to publicly perform their work.

### a. The Digital Performance Right in Sound Recordings Act

In 1995, that changed when Congress passed the Digital Performance Right in Sound Recordings Act, giving copyright owners an exclusive right "to perform the copyrighted work

publicly by means of a digital audio transmission." See Pub. L. No. 104-39, § 2, 109 Stat. 336, 336 (1995) (codified at 17 U.S.C. § 106(6)).

While creating a new right and revenue stream for copyright owners, the law also created a compulsory statutory license regime for those wishing to transmit the copyrighted work. Under this framework, any non-interactive digital subscription service who wished to perform a sound recording publicly could do so without infringing by complying with notice requirements and by paying a royalty fee. *See* Pub. L. No. 104-39, amending 17 U.S.C. § 114(f)(5). The royalty rates were to be set every five years in adversarial rule-making proceedings held by the Copyright Royalty Board. *See* 17 U.S.C. § 114(f). The first of these proceedings began in 1996 and three subscription services—Muzak, Digital Cable Radio Associates (operating as "Music Choice"), and DMX Music, Inc.—participated. The resulting rates, some argued, favored the subscription service providers over the copyright holders.

### b. The Digital Millennium Copyright Act

In 1998, Congress revisited the compulsory license system, in part, to make the royalty rate-setting more favorable to copyright holders. It passed the Digital Millennium Copyright Act (the "Act") which established a new statutory scheme to determine royalties under Title 17 of the United States Code. Pub. L. No. 105-304, 112 Stat. 2860 (Oct. 28, 1998); 17 U.S.C. §§ 101, *et seq*. The new standard for calculating royalty rates under the Act reflected what "would have been negotiated in the marketplace between a willing buyer and a willing seller." 17 U.S.C. § 114(f)(2)(B). This is referred to as the willing buyer/willing seller standard. While the DMCA established new standards for determining royalty rates, it also created an exception for what it called a preexisting subscription service ("PSS"). 17 U.S.C. § 114(j)(11). A PSS was defined as

a "service that performs sound recordings by means of noninteractive audio-only subscription digital audio transmissions, which was in existence and was making such transmissions to the public for a fee on or before July 31, 1998 . . . ." *Id.* The three subscription services that participated in the original rate-making proceedings, including Muzak, were grandfathered under this exception. A PSS is not subject to the "willing buyer/willing seller" standard, but instead enjoy generally more favorable royalty rates set according to the old method.

### c. Muzak and DMX

At the time of the Act, Muzak provided its service of music channels only to customers of the satellite television provider the Dish Network ("Dish"). The service was branded to Dish customers as DishCD and Muzak has continued operating this service from the time of the Act through this litigation. Since the passage of the Act, Muzak has provided its service at the PSS rate without objection.

In 2011, Mood Media Corporation ("Mood") purchased Muzak and began operating it as a wholly owned subsidiary. A year later, Mood acquired DMX, one of Muzak's competitors. Like Muzak, DMX provided music channels to customers of a satellite television provider—DirecTV. DMX's service provided to DirecTV was branded as SonicTap. Before Mood's acquisition of DMX, DMX was not entitled to, nor did it pay, the PSS rates for its SonicTap program.[1]

Once Mood purchased DMX, it began to consolidate its assets, sunsetting the DMX service and assigning the DirecTV agreement and agreements with 15 other small cable affiliates and cooperatives from DMX to Muzak. In addition to putting DMX under the Muzak corporate roof, Muzak transitioned the SonicTap programming to be more like Muzak's offering through DishCD.

---

[1] Although there was an entity called "DMX" that participated in the original rate-making proceedings in 1996, due to corporate restructuring, that legal entity is not the same DMX acquired by Mood in 2012.

3

By May 2014, SonicTap's channels and Muzak's channels were being programmed by Muzak. The result were program offerings that Muzak describes as "virtually identical." *See* Def.'s Resp. at 30, ECF No. 45.

### d. SoundExchange Files Suit; this Court Dismisses; the D.C. Circuit Reverses

SoundExchange, Inc. ("SoundExchange" or "plaintiff") is designated by regulation as the sole representative of the copyright holders under the compulsory statutory licensing scheme. It collects the royalties owed under the statutory licenses and distributes them to performing artists and copyright holders. Until Mood's acquisitions of Muzak and DMX, SoundExchange collected royalties from Muzak for its DishCD transmissions paid at the PSS rate and royalties from DMX for its SonicTap transmissions paid at the new willing buyer/seller rate. But once the full integration of DMX into Muzak was completed in May 2014, Muzak paid the PSS rate for all of its subscription service transmissions.

SoundExchange challenged payment of the PSS rate for non-Dish transmissions by filing suit in this Court. SoundExchange believes that the PSS exception does not extend to Muzak's transmissions made to SonicTap subscribers. This Court initially dismissed the suit for failure to state a claim, holding that the word "service" in "preexisting subscription service" referred to the entity, Muzak. And therefore, Muzak, the business entity, was entitled to the PSS rate for all of its offerings. *SoundExchange, Inc. v. Muzak, LLC*, 167 F. Supp. 3d 147, 151-52 (D.D.C. 2016).

On appeal, the D.C. Circuit disagreed with the Court's interpretation and reversed that decision. *See SoundExchange, Inc. v. Muzak LLC*, 854 F.3d 713, 719 (D.C. Cir. 2017). The Circuit held that "the better interpretation of the statute is that the term 'service' contemplates a double

limitation; both the business and the program offering must qualify before the transmissions are eligible for the favorable rate." *Id.*

## II. ANALYSIS

Plaintiff now moves for summary judgment as to liability prior to the completion of discovery. Essentially, plaintiff argues that: (1) the D.C. Circuit's decision precludes any argument that Muzak may permissibly pay PSS rates for non-Dish transmissions; and (2) any discovery on defendant's affirmative defenses would be futile, as they fail as a matter of law. For the reasons set forth below, the Court agrees as to the former, but feels any ruling on the latter would be premature.

### a. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and [thus] the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)). In making its determination, the Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences accordingly. *Salazar v. Washington Metro. Area Transit Auth.*, 401 F.3d 504, 507 (D.C. Cir. 2005).

Courts generally consider "summary judgment [to be] premature unless all parties have had a full opportunity to conduct discovery." *Convertino v. United States DOJ*, 684 F.3d 93, 99 (D.C. Cir. 2012) (quotations omitted); *see also U.S. ex rel. Folliard v. Gov't Acquisitions, Inc.*,

880 F. Supp. 2d 36, 42 (D.D.C. 2012) ("Pre-discovery summary judgment motions are usually premature and hence disfavored."). Federal Rule of Civil Procedure 56(d) allows a court to deny a motion for summary judgment or defer deciding the motion if the nonmoving party shows that it cannot present facts essential to justify its opposition. *McWay v. LaHood*, 269 F.R.D. 35, 38 (D.D.C. 2010). The D.C. Circuit has instructed that a party's request for additional discovery in response to a motion for summary judgment should be granted almost as a matter of course. *Convertino*, 684 F.3d at 99.

### b. Muzak may not pay PSS Rates for its Non-Dish Transmissions

SoundExchange's prima facie case depends on the resolution of a single issue: whether Muzak could permissibly pay the PSS rate on its programming provided to SonicTap subscribers. SoundExchange argues that the D.C. Circuit's opinion mandates that this Court issue a ruling that it could not. It argues that such a ruling is inevitable and that no amount of discovery could obviate such a decision. Muzak, on the other hand, argues that any such ruling would be premature considering the lack of discovery in this case. In its view, the Circuit simply articulated a standard for determining if a music service may pay the PSS rate—a standard requiring full fact discovery for proper evaluation.

The Court must first decide whether a decision on this issue is even proper at this stage in the litigation. At the time SoundExchange filed its motion, fact discovery had not even started.[2] Such pre-discovery summary judgment motions are generally disfavored. *U.S. ex rel. Folliard*, 880 F. Supp. 2d at 42. But this situation is unique. In the Court's view, all the relevant facts are undisputed. In fact, in its Rule 56(d) request, Decl. of Joseph R. Wetzel, ECF No. 45-4, Muzak

---

[2] Since that time, discovery has started. But it is only in its nascent phase. *See* ECF No. 50.

does not list a single fact related to the prima facie case as a "Fact[] Presently Unavailable to Muzak." *Id.* Instead, Muzak's request focuses almost entirely on its affirmative defenses (discussed *infra* Part II(c)). No additional facts would change the Court's decision outlined below and, thus, discovery on this issue would be a waste of resources.

In the Court's view, the D.C. Circuit's opinion requires a finding that Muzak should not have paid the PSS rate on the programming provided to SonicTap subscribers. As noted, the Circuit held that the term "service" in the definition of "preexisting subscription service" in the Act "contemplates a double limitation[.]" *SoundExchange*, 854 F.3d at 719. And "both the business and the program offering must qualify before the transmissions are eligible for the favorable rate." *Id.* Here, it is undisputed that Muzak, the business entity, satisfies the first prong of the double limitation. *See id.* at 715; 17 U.S.C. § 114(j)(11). The question, then, is whether Muzak's non-Dish program offerings meet the second prong of the limitation.

Muzak argues that the residential subscription program offering provided by Muzak to DirecTV subscribers under the brand SonicTap was a PSS because it is "substantially similar" to the service it provides to DISH Network. Def.'s Resp. at 27-29, ECF No. 45. It points out that its subscription service is "white labeled," meaning that the satellite company may brand it however it chooses for distribution. *Id.* at 13. And although DISH Network chose to call Muzak's service DishCD and DirecTV chose to retain the SonicTap brand, the transmissions made by each brand are "virtually identical." *Id.* at 30. Muzak goes to great lengths in its briefing to demonstrate these similarities.[3] *See id* at 22 (stating that "[o]f over 1,000 tracks played on each of DishCD and

---

[3] It bears mentioning that Muzak does not argue that the services provided through SonicTap and DishCD are exactly the same. Despite the similarities, which Muzak points out in its briefing, there are some differences between the services' program offering, such as the 76 tracks that appeared on SonicTap's classic rock channel but not on DishCD's.

SonicTap in June 2014, only 76 tracks appeared on DirecTV's [classic rock] channel but not on Dish's"). And the Court has no reason to doubt that during the relevant time DishCD and SonicTap were in fact similar. In fact, the D.C. Circuit itself described SonicTap and DishCD as "quite similar." *SoundExchange*, 854 F.3d at 715.

Yet, even in light of those similarities the second prong of the double limitation test is not satisfied in this case. As the Circuit held "the grandfather clause should be interpreted narrowly." *Id.* at 719. The appeals court further stated that "Mood-Muzak's acquisition of DMX, if allowed to expand Muzak's grandfather eligibility to 'services' other than DishCD, threatens the very purpose of the Act." *Id.* The Act was intended to move the industry to market rates. *Id.* Although Congress intended to protect Muzak's investments in DishCD, the court made clear that "when Muzak expands its operations and provides additional transmissions to subscribers to a different 'service,' (*i.e.*, SonicTap), this is an entirely new investment." *Id.* at 719. As such, the service offered by Muzak to DirecTV subscribers is not the same program offering as the service offered to Dish subscribers, regardless of their similarities.

As a matter of policy, using the similarities between SonicTap and DishCD now to justify Muzak's payment of the PSS rates for its non-DISH transmissions, would expand the grandfather clause beyond the interpretation ascribed by the Circuit. The Court would have to undermine the purpose of the Act and would create a roadmap for a company with an aggressive acquisition strategy to effectively eliminate the market-rate regime. The Court finds that Muzak's non-DISH transmissions do not fit the statutory definition of a PSS. Plaintiff's motion is granted as to its prima facie case.

### c. Summary Judgment is Premature as to Muzak's Affirmative Defenses

In its answer, Muzak asserted the affirmative defenses of estoppel and unclean hands. *See* Def.'s Answer at 8, ECF No. 18. Muzak has since withdrawn its estoppel defense, choosing to focus on unclean hands and its application via the doctrine of copyright misuse. In regard to these defenses, Muzak has pleaded that, "while fighting to cabin Muzak's service to a single satellite network, SoundExchange has freely allowed the only other remaining PSS entity, Music Choice, to add or switch cable operators and satellite carriers while maintaining PSS status across all of these distribution networks." Def.'s Resp. at 33, ECF No. 45. In fact, Muzak claims that SoundExchange's members have an ownership interest in Music Choice and that Music Choice took the DirecTV account at issue in this litigation, in part, because of SoundExchange's implicit sanctioning of its use of the PSS Rate. *See id* at 22-24, 34. SoundExchange would have the Court dismiss Muzak's defenses prior to discovery. The Court believes that such a ruling before Muzak is given a chance to learn all the pertinent facts would be premature.

Under Rule 56(d), a court may deny a motion for summary judgment or order a continuance to permit discovery if the party opposing the motion adequately explains why, at this point in time, it cannot present facts needed to defeat the motion. *Strang v. United States Arms Control & Disarmament Agency*, 864 F.2d 859, 861 (D.C. Cir. 1989). Because pre-discovery summary judgment is disfavored, the D.C. Circuit has directed trial courts to grant Rule 56(d) requests "almost as a matter of course." *See Convertino*, 684 F.3d at 99. Here, SoundExchange's motion was filed before any discovery had even begun. As noted in the declaration submitted by Muzak, the facts that could demonstrate SoundExchange's alleged bad faith are presently unavailable to Muzak and in possession of the plaintiff. *See* Decl. of Joseph R. Wetzel, ECF No.

45-4. The Court concludes that it would be premature and unjust to consider a motion for summary judgment on Muzak's affirmative defenses when the discovery process might yield additional facts that would guide the Court's decision as to the merits of those defenses. Once discovery has ended, the parties may elect to submit summary judgment motions, at their discretion.

### III. CONCLUSION

For the reasons stated herein, plaintiff's Motion for Summary Judgment as to Liability [ECF No. 35] is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted as to SoundExchange's prima facie case for relief, but the Court denies the motion as to Muzak's affirmative defenses. An order consistent with this holding accompanies this opinion.

DATE: 8/21/18

Royce C. Lamberth
United States District Judge