UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SOUNDEXCHANGE, INC., <br><br> Plaintiff, <br><br> v. <br><br> MUZAK, LLC, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case 15-cv-0476-RCL <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM OPINION

Before the Court is Muzak's motion to compel discovery of documents and communications related to its unclean hands affirmative defense. In its August 21, 2018 memorandum opinion, the Court granted summary judgment as to SoundExchange's prima facie case, but it denied the motion in relation to Muzak's affirmative defense. The Court concluded that it would be premature and unjust to consider a motion for summary judgment on Muzak's remaining affirmative defense when the discovery process might yield additional facts that would guide the Court's decision as to the merits of the affirmative defense.[1]

In the months that followed, the parties continued the discovery process until they hit the present roadblock. Muzak sought—and continues to seek—any documents related to Music Choice's total royalties paid to SoundExchange, the possible discontinuation of any entity's payments of preexisting subscription service ("PSS") rates, and SoundExchange's audits of Music

---

[1] The Court assumes familiarity with this case's factual background and procedural posture up until the current discovery dispute. *See SoundExchange, Inc. v. Muzak, LLC*, 322 F. Supp. 3d 72, 73–75 (D.D.C. 2018) (providing background information and context).

Choice, as well as other pre-2014 documents. For the reasons that follow, the Court will grant in part and deny in part Muzak's motion to compel discovery.

Also before the Court is SoundExchange's motion for summary judgment. Because the Court will compel additional discovery related to Muzak's affirmative defense, SoundExchange's motion is not yet ripe. Accordingly, the Court will deny the motion for summary judgment without prejudice.

I. **Confidential Royalty Payment Documents**

Muzak argues that documents related to Music Choice's royalty payments to SoundExchange are both relevant and not protected from disclosure by federal regulations. Def.'s Am. Mot. 7–8, ECF No. 61-1. Muzak's unclean hands affirmative defense "turns on SoundExchange's treatment of Music Choice," so Muzak believes that these documents could provide evidence of favorable treatment of Music Choice. *Id.* at 7. Specifically, Muzak seeks this information to determine whether SoundExchange was aware of any changes to Music Choice's services that would have made Music Choice ineligible to keep paying PSS royalty rates. Def.'s Reply 9, ECF No. 65.

SoundExchange argues that Music Choice's royalty payment documentation and the documentation related to Music Choice's PSS rates are confidential and protected by 37 C.F.R. §§ 370.3(g) and 382.6(b)–(c). Pl.'s Mem. Opp. 15, ECF No. 79. SoundExchange also expresses concern that Muzak is abusing the discovery process to bypass regulatory restrictions and improperly gain access to a competitor's confidential information. *Id.* at 16. With respect to relevance, SoundExchange argues that Music Choice's royalty payment documentation will not produce information relevant to Muzak's defense because SoundExchange does not collect information on royalties broken down by a distribution system, as sought by Muzak. *Id.* at 13

n.14. Furthermore, SoundExchange argues that this request would be overly burdensome, disproportionate to the needs of the case, and is not likely to yield helpful results. *Id.* at 14.

Turning to the regulations first, 37 C.F.R. § 370.3(g) states that a Collective, such as SoundExchange, "shall not disseminate information in the Reports of Use to any persons not entitled to it, nor utilize the information for purposes other than royalty collection and distribution, and determining compliance with statutory license requirements, without express consent of the preexisting subscription service providing the Report of Use." SoundExchange reads the regulation to lack any exception for parties seeking documents through discovery. Pl.'s Mem. Opp. 15. Muzak denies that it is a "person[] not entitled to [the documents]" under the regulation because being an adverse party in litigation entitles it to those documents by virtue of the discovery process' demands on the parties involved. Def.'s Am. Mot. 8. The Court disagrees with Muzak's reading of the regulation because 37 C.F.R. § 382.6(c) provides further support for SoundExchange's reading of it.

SoundExchange first cites 37 C.F.R. § 382.6(b) in support of its argument against disclosure. Pl.'s Mem. Opp. 15. The regulation prohibits SoundExchange from "us[ing] any Confidential Information for any purpose other than royalty collection and distribution and activities related directly thereto."[2] *Id.* § 382.6(b). But the dispute here is not over SoundExchange's *use* of the royalty documents—rather, the issue is whether the regulations permit SoundExchange to *disseminate* the royalty documents without Music Choice's consent to an adverse party seeking discovery.

---

[2] For purposes of the regulation, "Confidential Information" is defined as "the Statements of Account and any information contained therein, including the amount of royalty payments and any information pertaining to the Statements of Account reasonably designated as confidential by the party submitting the statement." 37 C.F.R. § 382.6(a).

3

SoundExchange also cites § 382.6(c), which deals with disclosure of confidential information, in support of its argument. SoundExchange reads § 382.6(c) to mean that "access to information in Statements of Account is limited to SoundExchange, independent auditors who are authorized to act on behalf of copyright owners, and the copyright owners and performers whose works have been used." Pl.'s Mem. Opp. 15 n.17. SoundExchange's reading of the regulation omits any mention of subsection (c)(4), which states that a Collective may also disclose confidential information to "[a]ttorneys and other authorized agents of parties to proceedings under 17 U.S.C. 112 or 114, acting under an appropriate protective order." 37 C.F.R. § 382.6(c)(4). Although the present case contemplates issues stemming from 17 U.S.C. § 114, it is not a "proceeding" within the meaning of the regulation.[3] As such, § 382.6(c) restricts SoundExchange's ability to disclose royalty payment documents to Muzak's outside counsel, regardless of whether a protective order shields the documents.

Reading 37 C.F.R. §§ 370.3(g) and 382.6(c) together, the Court holds that Muzak is not entitled to SoundExchange's royalty payment documents.[4] Accordingly, the Court need not evaluate their relevance and will deny Muzak's motion to compel all documents showing Music Choice's total royalty payments to SoundExchange.

## II.  Audit Documents

Muzak also seeks SoundExchange's audits of Music Choice's royalty payments because the audits relate to SoundExchange's treatment of Music Choice, the very center of Muzak's unclean hands affirmative defense. Def.'s Am. Mot. 6. Before considering the parties' arguments

---

[3] The regulation is referring to proceedings before Copyright Royalty Judges pursuant to 17 U.S.C. § 801 *et seq. See* 17 U.S.C. §§ 112(e)(3), 114(f)(1)(A).

[4] The Court also considers documents pertaining to the discontinuation of PSS rates (Request Number 6) to be shielded from discovery if they contain confidential royalty payment information. But the discoverability of documents concerning the rationale for discontinuation that do not contain confidential royalty payment information (i.e. concerning PSS eligibility) will be discussed in Section III.

4

concerning relevance, need, and privilege, the Court can deny Muzak's motion to compel the audit documents for the reasons stated in the previous section.

As SoundExchange notes, the purpose of an audit is to "examine the licensee's records to verify the information reported on its Statements of Account." Pl.'s Mem. Opp. 17. These records, and the resulting analyses of them, fall under the 37 C.F.R. § 382.6(a) definition of "Confidential Information." That definition not only includes all information contained in the Statements of Account, but also "any information pertaining to the Statements of Account reasonably designated as confidential by the party submitting the statement." *Id.* The audit documents, which directly pertain to the Statements of Account, would reveal even more confidential information about Music Choice's royalty payments than the statements themselves, so § 382.6(c) protects them from disclosure as well. Accordingly, the Court will deny Muzak's motion to compel the audit documents.

### III. Pre-2014 Documents

Finally, Muzak moves to compel the production of various documents predating 2014. Def.'s Am. Mot. 10. Muzak seeks (1) documents or communications related to SoundExchange's evaluation of any entity's eligibility to pay PSS rates, (2) communications concerning license rates or terms with sound recording companies that own or have owned an interest in Music Choice, and (3) documents related to SoundExchange's interpretation of "preexisting service subscription" and "preexisting satellite digital audio radio service," including any analyses concerning which services could be altered without losing PSS eligibility. *Id.* Muzak argues that these documents are relevant to its affirmative defense because they would shed light on SoundExchange's comparative treatment of Muzak and Music Choice as PSS eligible entities. *Id.* Without waiving any of its objections, SoundExchange searched its records for responsive documents but did not

5

use Muzak's preferred search terms.[5] Pl.'s Mem. Opp. 12. SoundExchange has not revealed which search terms it used, so Muzak moved to compel SoundExchange to perform the search again with Muzak's preferred search terms. Def.'s Am. Mot. 10.

SoundExchange argues that the motion to compel pre-2014 documents would force it to search for documents that likely do not exist and would require it to unnecessarily expend even more resources on a fruitless search. Pl.'s Mem. Opp. 10. SoundExchange maintains that the expansive time span of the request, which goes back to the passage of the Digital Millennium Copyright Act in 1998, is too burdensome, especially because SoundExchange has only existed since 2003. *Id.* at 9. Because Muzak paid royalties as low as or lower than its competitors without being challenged by SoundExchange until 2014, SoundExchange argues that Muzak cannot make a case for compelling discovery prior to that point. *Id.* Finally, SoundExchange contends that Muzak is not entitled to dictate search terms under Rule 26. *Id.* at 12.

There is a broad presumption in favor of discovery, but the presumption is bounded by certain limitations, as articulated in Federal Rule of Civil Procedure 26(b)(1). *See Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1349 (D.C. Cir. 1984). Muzak is entitled to any nonprivileged documents or communications relevant to its affirmative defense and proportional to the needs of the case, considering also whether the burden or expense of the proposed discovery outweighs its likely benefit. *See* Fed. R. Civ. P. 26(b)(1). Rule 26 vests the Court with "broad discretion to tailor discovery narrowly." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998).

As the D.C. Circuit noted, relevance in discovery "can be viewed as a showing of need." *Friedman*, 738 F.2d at 1341. Muzak argues that it needs these documents in order to make a case that it was treated differently than Music Choice. As stated earlier, SoundExchange rejects that

---

[5] According to SoundExchange, the search turned up "only a handful of responsive documents, all of which were privileged." Pl.'s Mem. Opp. 5.

6

Muzak needs pre-2014 documents because Muzak paid royalties as low as or lower than its competitors without being challenged by SoundExchange until 2014. The Court agrees with Muzak on this issue. Muzak is entitled to documents or communications that could shed light on SoundExchange's historical treatment of Music Choice compared to Muzak. If at any point, either before or after 2014, SoundExchange discovered information about Music Choice that would have invalidated Music Choice's ability to pay PSS rates, yet SoundExchange did nothing about it, documents or communications regarding that treatment would be both relevant and proportional to the needs of the case.

Many of SoundExchange's other arguments delve into the merits of Muzak's affirmative defense, but doing so is not proper at this phase. If Muzak's affirmative defense is meritless, as SoundExchange suggests, then it will be dealt with at the summary judgment phase. But Muzak must have a full and fair opportunity to obtain relevant evidence to put forward its best arguments possible in support of its affirmative defense. And SoundExchange has not provided enough evidence to convince the Court that its second search of these documents would be so burdensome that it outweighs any benefit Muzak would receive from the documents.[6] As such, the Court will compel SoundExchange to search for the pre-2014 documents in accordance with Muzak's preferred search terms, with some exceptions.

SoundExchange's objection to Muzak's demand for documents dating all the way back to the passage of the Digital Millennium Copyright Act in 1998 is a valid one. SoundExchange was founded in 2003, so the Court will not compel SoundExchange to search for documents before it even existed. This cutoff is not an arbitrary one because Muzak's affirmative defense is based on SoundExchange's comparative treatment of Muzak and Music Choice. Searching for documents

---

[6] The fact that SoundExchange has already performed a pre-2014 search, albeit with different search terms, is further evidence that its second search will not be a Herculean task.

that predate SoundExchange's existence will not produce evidence related to SoundExchange's treatment of either entity.

Furthermore, should any responsive documents or communications reveal confidential royalty payment information as defined in 37 C.F.R. § 382.6(a), that information must at least be redacted. If the only responsive portions of those documents or communications are that confidential information, then SoundExchange may withhold them. Any responsive documents or communications that reveal competitive business information that are not protected by § 382.6(c) must be submitted pursuant to the protective order so that it cannot be abused.

### IV. Summary Judgment

Because the Court is ordering additional discovery, SoundExchange's motion for summary judgment is not yet ripe. The parties should have the opportunity to brief the importance, or lack thereof, of whatever evidence comes from the additional discovery. Accordingly, the Court will deny the motion for summary judgment without prejudice. Once discovery has ended, the parties may elect to submit summary judgment motions, at their discretion.

### V. Conclusion

The Court will grant in part and deny in part Muzak's motion to compel discovery and deny SoundExchange's motion for summary judgment. A separate order follows.

Date: August 23, 2019

Royce C. Lamberth
United States District Judge